STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-11-42
MMM-KEN 3/10/14

FOX ISLANDS WIND NEIGHBORS, et al.,
    Petitioners,

v.

**ORDER ON RULE 80C
PETITION**

MAINE DEPARTMENT OF ENVIRONMENTAL
PROTECTION, et al.,
    Respondents.

Before this Court are: 1) Rule 80C Petition filed by Fox Island Wind Neighbors (the

"Petitioners" or the "Neighbors") seeking review the "Condition Compliance Order" (the

"CCO") issued on June 30, 2011 by the Department of Environmental Protection (the "DEP");

and 2) a motion to dismiss the Neighbors' Petition on mootness grounds filed by Party-in-

Interest, Fox Island Wind, LLC ("FIW").

## PROCEDURAL BACKGROUND

On July 28, 2011, the Neighbors and various individual residents of Vinalhaven, Maine

filed a Rule 80C Petition for review of the CCO issued on June 30, 2011 by the DEP, which

approved a "Revised Operating Protocol" submitted by FIW in response to the DEP's

determination that FIW violated 06-096 C.M.R. ch. 375, §10 (2001) while operating a small-

1

scale wind energy project located on the island of Vinalhaven.[1] In their Petition, the Neighbors asserted that the CCO was the product of political intervention, which undermined the judgment of the DEP's professional staff and consultants. (Pet. 19.) The Petition further argued that the CCO was in violation of statutory provisions requiring wind energy projects to be regulated to prevent excessive noise, in excess of statutory authority, unsupported by substantial evidence, arbitrary and capricious, and affected by abuse of discretion. (Pet. 21-22.)

This case has a complex procedural history and the Court has issued multiple orders. On March 20, 2012 the Court denied a Motion to Dismiss brought by FIW and the DEP who claimed that this Court lacked jurisdiction as the CCO at issue was "certification" would not be judicially reviewable by statute. 35-A M.R.S.A §3456(2). The Court found that because the CCO at issue was better characterized as "enforcement" -- if for no other reason than the certification of this wind project occurred on June 5, 2009 and the complaints of violations of the noise rules arose over a year later after certification (on July 17 and 18, 2010). Moreover, the Court found that prior to the final agency action at issue, the DEP had included in the certification enforcement mechanisms by establishing operational and complaint protocols which would have to be followed if complaints were made and validated regarding noise levels after the turbines began spinning.

Nine days later, the DEP filed a Motion to Reconsider the order denying the motions to dismiss, adding a new argument not raised in the initial briefing, namely whether the Neighbors had standing to challenge the DEP's enforcement of violations of the CCO. The Court first noted that the DEP had previously conceded that *if* the CCO at issue constituted enforcement then the

[1] The license, Certification # L-24564-ES-A-N, to operate a small scale wind energy project, issued by the DEP to FIW, contained a finding that FIW's turbines satisfied noise control rules pursuant to 06-096 C.M.R. ch. 375, §10 (2001), but was subject to conditions, including sound monitoring and an amendment of certification if violations occur. It included special condition #8 in the certification, and a mandatory amendment process if noise standards were exceeded.

Court had jurisdiction to review the agency action but only if the dispute was between the Department and the developer. The Court rejected the DEP's argument that no Maine citizen who lives adjacent to a small-scale wind development has the right to seek judicial review of even post-certification actions of the Department, and the argument that the only remedy for abutters to wind projects would be to pursue and prevail in a common law claim for nuisance against the developer. The Court rejected the Respondents' reliance upon *Great Hill Fill & Gravel v. Board of Environmental Protection,* 641 A.2D 184 (Me. 1994) and relied instead upon the Law Court's decision in *Friends of Lincoln Lakes v. Department of Environmental Protection,* Maine Supreme Judicial Court, Mem. Docket No. BEP-10-554 (June 6, 2011), as well as general principles of standing in denying the motion to reconsider. *Lindemann v. Comm'n on Governmental Ethics and Election Practices,* 2008 ME 187, 961 A.2d 538.

On April 13, 2012, the Neighbors filed an amended petition, which added two additional claims for relief under the United State Constitution and 42 U.S.C. 1983: Count III alleged that the CCO violated the Neighbors' right to petition the DEP protected by the First Amendment; and Count IV alleged that the CCO discriminated against the Neighbors in violation of the Fourteenth Amendment's Equal Protection Clause by depriving them of the right to be protected from excessive noise that is available to any other Maine resident in close proximity to a wind project. FIW and DEP then filed motions to dismiss the independent claims, which were granted by the Court on November 1, 2012. The Court found that the Neighbors had available to them a means to obtain direct judicial review of the agency action through the Maine Administrative Procedure Act, and that review under Rule 80C could provide adequate remedies for the Neighbors if they prevailed. The Court also noted that constitutional arguments could be made as part of the Rule 80C proceeding and issued a Consent Order addressing this issue and other

3

matters on November 27, 2012. The consent order allowed the Neighbors to include their constitutional arguments in their Rule 80C brief on the merits pursuant to 5 M.R.S.A. § 11007(4)(C)(1). The parties proceeded to brief the merits of the Rule 80C proceeding, and oral argument was conducted on July 15, 2013. Just before oral argument, the Court met with counsel to the parties to suggest a judicially-assisted settlement conference with another Superior Court Justice.

On July 19, 2013, FIW moved this Court to dismiss the Neighbors' 80C Petition on mootness grounds. FIW argues that the Petition is now moot because of the DEP's May 7, 2013 findings that FIW is operating in compliance with the DEP's noise regulation as a result of FIW having installed serrated fins on its turbine blades and thereby having decreased noise by 2-4 dBA.

The parties agreed in late summer of 2013 to participate in multiple sessions of judicially-assisted settlement conferences, but the undersigned Justice was notified in November of 2013 that settlement efforts were unsuccessful. The Court then took the matter under advisement.

## FACTUAL BACKGROUND

On March 24, 2009, FIW applied with the DEP to build and operate a small-scale wind energy development project on Vinalhaven, Maine. (Br. of Pet. 5.) On June 5, 2009, the DEP issued FIW a Certification pursuant to 35-A M.R.S.A. § 3456 approving the project. (Petitioners' Rule 80C Brief Appendix 10.)[2] Condition No. 8 of the Certification provided:

> If the compliance data indicates that, under most favorable conditions for sound propagation and maximum amplitude modulation, the proposed project is not in compliance with Department standards as described in Finding 3, within 60 days of a determination of non-compliance by the Department, the applicant shall submit, for review and approval, a revised operation protocol that demonstrates

---

[2] Hereinafter, record materials cited in Petitioners' Rule 80C Brief Appendix containing most relevant documents from the record will be referred to as "Pet. App."

that the project will be in compliance at all the protected locations surrounding the development.

In other words, according to Condition No. 8, if FIW's turbines were to produce noise in excess of applicable standards, FIW would be required to implement a noise-reduction operation plan using a "revised operation protocol."

On November 30, 2009, the DEP approved the Operational Sound Measurement Compliance Protocol (OSMCP), which specified the conditions and procedures under which FIW would be required to measure sound and demonstrate compliance with the Certification. (Pet. App. 39.) The DEP additionally required that "[c]ompliance testing . . . must be submitted to the Department following any noise-related complaints after the commencement of operations, with consideration for the required weather, operations and seasonal constraints." (Pet. App. 44.)

Soon after the project began operations, the Neighbors began complaining about noise generated by the turbines. The Neighbors hired an attorney and an acoustical consultant, who conducted sound measurements beginning in March 2010. (Br. of Pet. 10-12.) Starting at the end of April 2010, the Neighbors submitted numerous noise complaints to the DEP and requested that the DEP compel FIW to submit compliance assessment data as required in the November 2009 OSMCP. (Br. of Pet. 10-12.) Among these complaints were the Neighbors' complaints for the nights of July 17 and 18, 2010 alleging violations of the noise control rules.[3]

On November 23, 2010, the DEP issued a formal non-compliance letter to FIW based on one specific complaint the Neighbors had previously filed relating to noise infractions on July 17 and 18, 2010. (Pet. App. 59.) The letter found FIW to have exceeded the 45 dBA nighttime sound limit and instructed FIW to submit within 60 days a "Revised Operation Protocol," as

---

[3] As of March 27, 2007, the Wind Ordinance in effect required compliance with state noise regulations, and limited sound levels at a neighboring property line to be no more than 45 dBA (day or night), and also required a lowering of sound by 5 dBA for "repetitive impulsive sounds," and also regulated low frequency noise. (Br. of Pet. 5 n.5.)

required by Condition No. 8 of the Certification. (Pet. App. 60.) The Revised Operation Protocol was required to "demonstrate[] that the development will be in compliance at all protected locations surrounding the development at all times . . . ." *Id.*

On April 11, 2011, FIW submitted a Revised Operation Protocol, which committed to reduce the sound level from the FIW turbines only when the meteorological conditions are identical to the conditions observed on July 17 and 18, 2010—the wind direction is between 200° and 250°, or blowing in the south southwesterly direction. (Pet. App. 75.) However, the DEP determined that FIW's submission was inadequate, and drafted a counterproposal, which set forth provisions that the DEP staff, working with Assistant Attorney General Amy Mills and Warren Brown, believed were necessary to ensure compliance of future operations with the Noise Rule. This counterproposal consisted of a CCO, but also included "Appendix A," which was modeled after another small-scale wind project that the DEP was working on at Pisgah Mountain. (Pet. App. 103.) FIW objected to the inclusion of Appendix A.

On or about June 20, 2011, Patricia Aho took over as Acting Commissioner of the DEP. Ms. Aho began working at the DEP as Deputy Commissioner in early 2011 directly after leaving employment as a lobbyist for Pierce Atwood, the same firm representing FIW. (Br. of Pet. 20.) Ten days after becoming Acting Commissioner, on June 30, 2011, Commissioner Aho, in addition to limiting noise-reduction requirements to the exact meteorological conditions of July 17 and 18, 2010,[4] chose to issue the CCO without Appendix A.

---

[4] Specifically, the Revised Operation Protocol pledged to use a new "Noise Reduced Operations configuration" between 7:00 PM and 7:00 AM whenever the wind direction is between 200° and 250° and the wind shear measures a 10-minute average wind speed of 6 mph or lower (*i.e.,* when the conditions of July 17 and 18, 2010 exist).

## STANDARD OF REVIEW

Under 5 M.R.S.A. § 11007(4)(C), the Superior Court may reverse or modify an agency decision if the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by bias or error of law;
(5) Unsupported by substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S.A. § 11007(4)(C)(1)-(6). *See also Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 (mandating that the Court will review the agency decision for an abuse of discretion, error of law, or findings of fact unsupported by substantial evidence in the record); *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551. The "review of state agency decision-making is deferential and limited." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128. A party seeking to vacate a state or local agency decision bears the burden of persuasion on appeal. *Bizier v. Town of Turner*, 2011 ME 116, ¶ 8, 32 A.3d 1048.

In applying the "substantial evidence" standard, the Court does not weigh the merits of evidence, but rather determines whether there is "any competent evidence in the record to support a finding." *Concerned Citizens to Save Roxbury v. Bd. of Envtl. Prot.*, 2011 ME 39, ¶ 24, 15 A.3d 1263. "Upon review of an agency's findings of fact we must examine the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Id.* (quoting *Friends of Lincoln Lakes*, 2010 ME 18, ¶ 13, 989 A.2d at 1133). An agency's findings of fact will be vacated "only if there is no competent evidence in the record to support a decision." *Id.*

7

An action is arbitrary or capricious "when it can be said that such action is unreasonable, has no rational factual basis justifying the conclusion or lacks substantial support in the evidence." *Cent. Maine Power Co. v. Waterville Urban Renewal Auth.*, 281 A.2d 233, 242 (Me. 1971). *See also Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 8, 870 A.2d 566 (holding: "[w]e do not find that an administrative agency has acted arbitrarily or capriciously unless its action is 'willful and unreasoning' and 'without consideration of facts or circumstances.'"); *Help-U-Sell, Inc. v. Maine Real Estate Comm'n*, 611 A.2d 981, 984 (Me. 1992); *Carl L. Cutler Co. v. State Purchasing Agent*, 472 A.2d 913, 916 (Me. 1984).

Likewise, "[a]n abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and the governing law." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567. However, "[i]t is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant or even to a reviewing court." *Id.*

The Court reviews constitutional questions, *i.e.* Petitioners' First Amendment and equal protection claims, *de novo*. *Newton v. LePage*, 700 F.3d 595, 601 (1st Cir. 2012) (citing *Ridley v. MBTA*, 390 F.3d 65, 75 (1st Cir.2004)); *Mekhoukh v. Ashcroft*, 358 F.3d 118, 129 (1st Cir. 2004). "Judges, as expositors of the Constitution, must independently decide whether the evidence in the record is sufficient to cross the constitutional threshold." *Newton*, 700 F.3d at 601 (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 511, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984)).

## DISCUSSION

### *Should the Neighbors' 80C Petition be dismissed as moot?*

As a threshold matter, this Court must decide whether the Petition is now moot as a result of the DEP's May 7, 2013 findings that FIW is operating in compliance with the DEP's noise regulations. The finding of compliance was made on the basis of the CCO challenged by the Petition at hand. If as a result of a remand or reversal by this Court, the DEP were to revise the CCO, it could also revise or even invalidate its May 7, 2013 finding of compliance by FIW. For that reason, the Neighbors' Petition is not moot.

### *First Amendment Claim*

As basis for their First Amendment claim, Petitioners allege that the DEP retaliated for the exercise by the Neighbors of their right to petition the government for redress of grievances. The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment. *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194-95 (2d Cir. 1994) (citations omitted). Retaliation by a public official for the exercise of a constitutional right gives rise to an actionable constitutional claim. *Mt. Healthy City School Dist. Bd. of Education v. Doyle*, 429 U.S. 274 (1977).

The parties agree to the three prima facie elements that the Neighbors must establish to make out a claim for First Amendment retaliation: (1) Petitioners' conduct is protected by the First Amendment; (2) a public official took an adverse action against Petitioners; and (3) the adverse action was motivated or substantially caused by Petitioners' exercise of their First Amendment rights. *Nestor Colon Medina & Sucesores, Inc. v. Custodia*, 964 F.2d 32, 40-43 (1st Cir. 1992); *Gagliardi*, 18 F.3d at 194; *Am. Civil Liberties Union of Maryland, Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993).

9

Retaliation is actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights. *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004) (citation omitted). "Where there is no impairment of the plaintiff's rights, there is no need for the protection provided by a cause of action for retaliation." *Am. Civil Liberties Union of Maryland, Inc.*, 999 F.2d at 785. If a plaintiff fails to show that the public official's conduct adversely impacted the plaintiff's First Amendment right by chilling, impairing, or denying the exercise of this right, the Court will dismiss the First Amendment claim. *Id.* at 786. Mere "inconvenience" in exercising the right will not suffice to make out a claim for First Amendment retaliation. *Id.*

Here, Petitioners failed to demonstrate that the CCO, or specifically, the revised complaint protocol either chilled, or impaired or denied their right to file grievances. First, the CCO is not binding on the Neighbors. (Pet. App. 96-97.) It is binding on FIW. With respect to the noise complaint protocol, the CCO provides that "the interested parties are not bound" to it and that Petitioners should adhere to its data collection requirements "to the extent practicable." (Pet. App. 97.) The CCO further states that "data collected in a manner contrary to the protocol . . . will be difficult to effectively analyze and may be discounted by the department." (Pet. App. 97.) During oral argument, the DEP clarified that complaints filed pursuant to the CCO's complaint protocol *and* "unsubstantiated" complaints are acknowledged by the DEP. The "unsubstantiated" ones are monitored to "develop a pattern."

Second, the revised complaint protocol—which was subsequently incorporated by reference into the CCO—was issued by the DEP on June 23, 2010 and revised on July 8, 2010. (Pet. ¶ 38.) This action by the DEP did not prevent the Neighbors from filing their complaints for July 17 and 18, 2010, the complaints that served as basis for the CCO at issue. It is true that in response to the revised protocol, the Neighbors had to hire an acoustic expert to collect data for

10

the July 17 and 18, 2010 complaints, but mere "inconvenience" in exercising the First Amendment right will not suffice to make out a claim for First Amendment retaliation. *Am. Civil Liberties Union of Maryland, Inc.*, 999 F.2d at 786.

Because Petitioners failed to establish sufficiently adverse impact necessary to a retaliation claim, they have failed to assert a constitutional violation, and for that reason their First Amendment claim will be dismissed.

### Equal Protection

Petitioners also allege that the CCO discriminates against them in violation of the Fourteenth Amendment's Equal Protection Clause by depriving them of the right to be protected from excessive noise that is available to any other Maine resident residing in close proximity to a wind project. The Maine courts apply "a two-step test to determine whether a statute violates the Equal Protection clause. First, the party challenging the statute must show that similarly situated persons are not treated equally under the law." *See, e.g., Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 26, 989 A.2d 1128. Then, if the challenge does not involve a fundamental right or suspect class, the test is whether the statute is rationally related to a legitimate state interest. *Id.*

Here, the Neighbors challenge the CCO on equal protection grounds as an abridgment of their fundamental First Amendment right to free speech. *See Powell*, 391 F.3d at 16 (recognizing that the right for redress of grievances is "among the most precious of the liberties safeguarded by the Bill of Rights"). Thus, they maintain that this Court should apply strict scrutiny. *Anderson v. Town of Durham*, 2006 ME 39, ¶ 29, 895 A.2d 944 ("If government action that is challenged on equal protection grounds infringes on a fundamental constitutional right, . . . it is subject to analysis under the strict scrutiny standard."). Respondents, on the other hand, take the position

11

that the level of scrutiny to be applied is rational basis because there is no suspect class. *Id.* (holding that if the government action does not implicate a suspect class, different treatment accorded to similarly situated persons need only be rationally related to a legitimate state interest). Before delving into the analysis of what level of scrutiny is applicable to the facts of the case at hand, this Court must determine whether Petitioners carried out their burden to demonstrate that similarly situated persons are not treated equally under the law.

First and foremost, as explained above, the CCO is not binding on the Neighbors. (Pet. App. 96-97.) It is binding on FIW. Because the CCO is not binding on the Neighbors, the only question is whether the DEP, in exercising its power to review developers' compliance with the "no adverse effect on the natural environment" standard of the Site Location Law, 38 M.R.S.A. § 484(3), applied that power "with an even hand." *In re Laurence T.*, 403 A.2d 1256, 1259 (Md. 1979). If it did, the Neighbors' equal protection claim will not succeed.

The Neighbors do not argue that either 38 M.R.S.A. § 484(3) or 06-096 C.M.R. ch. 375 (2001) is unfair on its face or impartial in appearance, but rather, that the enforcement of said statute and agency rule by the DEP was unfair because it resulted in unjust discrimination of the Neighbors. *In re Laurence T.*, 403 A.2d at 1259 (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886); *Snowden v. Hughes*, 321 U.S. 1, 8-10 (1944)). In support of their position that the Neighbors are treated differently from residents who are in close proximity to other wind projects in Maine, Petitioners refer to the certification orders the DEP issued to Spruce Mountain, Saddleback Ridge, and Pisgah Mountain wind projects and point out how their compliance protocols are different from the compliance protocol set forth in the CCO.

However, even if the Court disregards the fact that the record is not clear on whether this is an exhaustive list of wind projects in Maine—evidence necessary to draw an inference that *all*

other wind projects in Maine have a complaint protocol dissimilar to the one established for FIW, there is still no evidence in the record that *de facto*, the DEP responds differently to the Neighbors' complaints than to complaints submitted by the neighbors of Spruce Mountain, Saddleback Ridge, and Pisgah Mountain wind projects. On the contrary, the DEP purports that it simply cannot "afford to open an investigation into every anecdotal complaint of noise it receives regarding wind projects, or any other form of development it permits" suggesting that unsubstantiated, "anecdotal" complaints received with respect to *any* licensee could be disregarded. (DEP Br. 19 n.12.)

Moreover, the courts in the First Circuit have articulated the need to establish a "gross abuse of power, invidious discrimination, or fundamentally unfair procedures" to succeed on an equal protection claim arising out of an administrative agency decision. *See, e.g., Creative Environments, Inc. v. Estabrook*, 680 F.2d 822, 832 (1st Cir. 1982); *Torremo v. Town of Fremont*, 438 F.3d 113, 119 ("[O]nly in 'extreme circumstances' will a land-use dispute give rise to an equal protection claim.") (quotation omitted). The ordinary state administrative proceeding involving land use or zoning does not generally present such a situation, regardless of how disappointed the licensee or privilege seeker may feel at being initially turned down. *Id.* Thus, where, as here, the question is whether the DEP exceeded or abused its authority by treating FIW more favorably than other wind projects, and, as a result, imposed a more burdensome complaint protocol on Petitioners than on neighbors of other wind projects, the Neighbors' equal protection claim represents nothing more than a claim that the DEP departed from its own procedures or those provided by the Maine law. *See SFW Arecibo, Ltd. v. Rodriguez*, 415 F.3d 135, 142 (1st Cir. 2005) (no equal protection claim when agency simply "departed from its own procedures or those provided by . . . law").

13

For the foregoing reasons, Petitioners' equal protection claim is hereby dismissed.

*Did Commissioner Aho properly consider relevant factors or have a rational basis for her determination that the Revised Operating Protocol should limit noise reduction efforts of FIW to times when the exact meteorological conditions of July 17 and 18, 2010 are present?*

As defined above, abuse of discretion is conduct that "exceed[s] the bounds of reasonable choices available to [the agency], considering the facts and circumstances of the particular case and the governing law." *Forest Ecology Network*, 2012 ME 36, ¶ 28, 39 A.3d 74. Additionally, "[a]n agency's determination is arbitrary and capricious if the agency lacks a rational basis for making the determination or if the decision was not based on consideration of the relevant factors." *Carcieri v. Kempthorne*, 497 F.3d 15, 43 (1st Cir. 2007), *rev'd on other grounds sub nom, Carcieri v. Salazar*, 555 U.S. 379 (2009). Thus, the question before this Court is whether there was a rational basis for Commissioner Aho's determination, or if it was based on consideration of relevant factors. To address these issues, the Court must review the information and evidence before the Commissioner at the time she issued the CCO and agreed to FIW's request that Appendix A not be implemented as the complaint protocol which FIW would have to follow to receive and respond to sound complaints from the Neighbors.

The data collected by the Neighbors and their expert on July 17 and 18, 2010 were reviewed by Warren Brown, the DEP's expert, who, in "conclusions" dated September 8, 2010 reported as follows: "FIW exceeded the nighttime noise limit of 45 dBA for 7 -10 minute intervals during the complaint period." (Pet. App. 53.) He further clarified that "[t]he July 17 & 18 complaint conditions were very similar with regards to surface wind speeds and WTG output or 80m wind speeds (May data) as FIWN complaints previously submitted for May 1, 4, 5, & 6 all of which reported sound levels between 46-48 dBA" and that "[a]lthough these complaints were prior to the 'FIW compliance protocol' in timing, nonetheless there exists a significant

body of consistent meteorological and sound data indicating sound levels greater than applicable limits." (Pet. App. 53-54.) In other words, Mr. Brown concluded that: 1) although the May data were not collected in accordance with the revised compliance protocol, it contained credible meteorological and sound data; and 2) violations may occur during meteorological conditions similar to the ones for May and July complaint dates. The May data showed that the wind direction for May-dated complaints ranged from 169° to 280°, or SSE, SSW, and NW. (Pet. App. 274, 276.) The July data showed that the wind direction for July-dated complaints ranged from 200° and 250°, or SSW. (Br. of Pet. 14.) Mr. Brown's report does not indicate whether a violation is more likely to occur when the wind is blowing in a certain direction. In fact, it is silent on whether wind direction played any role in his finding of a violation.

Based on Mr. Brown's report, on November 23, 2010, the DEP issued a formal determination of non-compliance, in which it stated that the "analysis of the operational, sound, and meteorological data collected ... indicate that ... [FIW] is likely to exceed the required sound compliance level of 45 dBA when there is a *significant vertical and directional shear*." (Pet. App. 59.) (emphasis added). Again, nowhere in the letter does DEP discuss wind direction or its role in causing the violation.

The first time a wind direction is mentioned in a December 21, 2010 email from Warren Brown to James Cassida, the Director of DEP Division of Land Resource Regulation. (Pet. App. 61.) In that email, Mr. Brown reiterated that the "increased wind shear" caused the violation of the noise rule and explained that said "increased wind shear" may happen with "winds ranging from SSE-NW." (Pet. App. 61.) A better understanding of what factors into an "increased wind shear" can be derived from an email James Cassida sent to FIW on January 10, 2011, where Mr. Cassida explained that "[i]t is [the DEP's] expectation that all wind shear conditions are not a

problem but at some point, as the *wind shear coefficient raises*, the level of wind shear present does affect the sound produced at the protected locations." (Pet. App. 64.) (emphasis added) Mr. Cassida then clarified that the level of wind shear should be measured by "alpha coefficient," which should be used by FIW "as the trigger for a reduced operations mode of operations." With respect to wind direction, Mr. Cassida stated unequivocally:

> While it is commonly understood that wind shear is most possible when winds are from the south southwest in the golf of Maine it is also possible that wind shear can be present under other wind directions as well. As a result of this, it is not acceptable that the trigger simply be based on wind directions alone.

(Pet. App. 64.)

On March 9, 2011, the DEP sent another letter to FIW, in which it emphasized that "*vertical and directional wind shear* directly contributed to non-compliance with the noise standards" and that "the range of wind shear conditions that affects sound power output" need to be addressed to resolve "the compliance issue." (Pet. App. 70.) (emphasis added) In response to FIW's suggestion that the revised condition compliance order require noise reduction operations when the wind is blowing in the south southwesterly direction only, the DEP responded that "[w]hile the Department appreciates the fact that FIW can demonstrate compliance under some conditions that include vertical and directional wind shear it is incumbent upon FIW to demonstrate compliance under all operational conditions, including those present on July 17th & 18th and similar periods." (Pet. App. 71.)

The relevant evidence in the record before the agency include the following: 1) FIW was likely to exceed the required sound compliance level of 45 dBA when there was significant vertical and directional wind shear; and 2) not all vertical and directional shears appear to be a problem, but they become a problem when the wind shear coefficient rises. However, the record

is quite unclear as to what other factors, or precise meteorological conditions, affect the wind shear coefficient.[5]

To justify Commissioner Aho's decision to limit noise reduction operations to the exact meteorological conditions of July 17 and 18, 2010, *i.e.*, when the wind direction is between 200° and 250°, the DEP now argues that the only instance of formal finding of non-compliance involved SSW winds—the meteorological conditions "where wind shear is most likely to occur." (Br. of Resp. 10.) The DEP characterizes the record as being "ambiguous" as to the effect of non-SSW winds, and argues that the Court should affirm Commissioner Aho's decision as she was basing her decision on what was "certain," as opposed to what was "uncertain." (Br. of Resp. 12.) But this is where the DEP's argument founders.

Although the record indicates that it may be "uncertain" what factors affect the wind shear coefficient (including possibly non-SSW wind direction), equally "uncertain" is the correlation between the SSW wind direction and the increase in the level of wind shear. By contrast, there is clear and un-rebutted evidence in the record that wind direction is not the main causative factor, and should not therefore be "the trigger." Winds blowing from other directions could be just as harmful as SSW winds. The Court concludes that there was no competent evidence supporting Commissioner Aho's decision to limit the CCO's regulation to only one factor— wind direction between 200° and 250°— because that factor might, or might not, cause the wind shear coefficient to rise.

Moreover, the CCO itself does not even attempt to explain the reasoning behind Commissioner Aho's decision, not only as to why she chose to focus only on wind direction, but also as to why she declined the recommendation of DEP staff that Appendix A was essential, in

---

[5] In an email to the DEP dated January 19, 2011, Warren Brown attached a graph reflecting wind shear during the complaint period for May and July. The graph reflects wind direction from SSE to NW and, besides wind direction, factors in "wind speeds in m/s @ T2 & 30 m surface" and "wind shear exponent."

the wake of the violations, to maintain ongoing compliance with the noise rule. The DEP's explanation now is that she based her decision on what was "certain," as opposed to what was "uncertain" and neither Respondent addresses in any direct fashion Commissioner Aho's decision to reject Appendix A. But the arguments regarding "certainty" are being proffered *post hoc* by the DEP's legal counsel, and such rationalizations are not ones the Court is allowed to accept. *See Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). *See also Michael Shane Christopher v. Smithkline Beecham, Corp.*, 132 S. Ct. 2156, 2166 (2012) (stating that the traditional call for deference to an agency's interpretation of its regulation may be overridden when such an interpretation is "a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack." (internal citation omitted)).

For the foregoing reasons, the Court concludes that, on the basis of the evidence before her, Commissioner Aho could not have rationally adopted a CCO that addresses only the speculative factor of wind direction to the exclusion of the one clear, relevant and uncontested causative factor: wind shear of a certain coefficient. The Court thereby reverses the Decision of the Department of Environmental Protection dated June 30, 2011, and remands this matter to the Department for issuance of a CCO consistent with the findings of the Department's expert.

With respect to the Commissioner's decision to reject, without explanation, the recommendation of the Department and the Attorney General's Office to require Appendix A to be part of the CCO, that issue will be remanded to the Department. While there could be a very good reason for her decision in this regard, the Court could find nothing in the agency record from the Commissioner or anyone acting on her behalf that explains the Department's rationale. The effect of this silence is of course to embolden somewhat cynical speculation by the Neighbors as to how and why certain decisions were made. Before the Court can review this

aspect of final agency action, the Department is entitled to an opportunity upon remand to provide its rationale based upon the information and evidence the Department had available to it at the time the decision was made regarding Appendix A.

### *Was the CCO a product of bias?*

Pursuant to 5 M.R.S.A. § 11007(4)(C)(4), the Superior Court may reverse or modify a decision by an administrative agency if it is affected by bias. Petitioners concede that there is no direct evidence of bias, but instead submit that there is substantial indirect evidence that would allow the Court to find that the decision to issue the CCO was affected by bias.

The Law Court has recently held that direct or indirect evidence of bias has to be "sufficient to overcome a presumption that the fact-finders, as state administrators, acted in good faith." *Friends of Maine's Mountains v. Bd. of Envtl. Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689. *See also Mallinckrodt LLC v. Littell*, 616 F. Supp. 2d 128, 135, 140 (D. Me. 2009) (observing that there exist "extraordinary circumstances . . . in which extreme bias completely renders a state adjudicator incompetent and inflicts irreparable harm upon the petitioner").

Petitioners present the following indirect support for their bias claim: 1) FIW's counsel, George Baker, engaged in a pattern of seeking political influence by obtaining access to legislators in order to sway decisions adversely affecting FIW; 2) Commissioner Aho (along with the Commissioners who preceded her in office) was presented with overwhelming support and justification for the inclusion of Appendix A, but chose to disregard it; 3) the DEP Commissioner at the time, Darryl Brown, informed his staff that existing DEP regulations were too burdensome, and subsequently met privately with Mr. Baker and his attorneys; 4) Commissioner Aho had been employed by Pierce Atwood, the firm representing FIW, shortly

before she rendered her decision in the matter; she even emailed personnel at Pierce Atwood to obtain assurance that she had not actually billed time to the FIW matter.

The Maine Administrative Procedure Act requires that administrative proceedings be conducted in an impartial manner, but there is no evidence in the record of any specific instances of partiality or prejudgment on the part of the DEP or its officers. *New England Tel. & Tel. Co. v. Pub. Utilities Comm'n*, 448 A.2d 272, 280 (Me. 1982). The cases that have found an agency officer disqualified have done so only after a showing of prejudgment on the specific facts subsequently presented to the agency. *Id.* (citing *Cinderella Career & Finishing Schools, Inc. v. FTC*, 425 F.2d 583 (D.C.Cir.1970) (where a Commissioner after an appeal was filed made public statements which gave the appearance that he had already prejudged the case and that the ultimate determination of the merits would move in predestined grooves); *American Cyanamid Co. v. FTC*, 363 F.2d 757 (6th Cir. 1966)). After review of the record, it appears that what Petitioners have actually presented in support of their claim of bias is merely communication across the branches of government, as well as proof that the executive agency—the DEP— shifted its priorities when Governor LePage was elected. "A preconceived position on law, policy or legislative facts is not a ground for disqualification." *New England Tel. & Tel. Co.*, 448 A.2d at 280. It is also not lost on the Court that at the beginning of this project, legislators and interest groups affiliated with the administration of Governor Baldacci were working hard to expedite the certification of this small wind project and get the turbines spinning.

In addition, the fact that Commissioner Aho was formerly employed by Pierce Atwood, or the fact that the CCO was issued in terms that highly favored to FIW cannot—by themselves—be the basis for a finding of bias, as the Law Court has defined that term. Petitioners can cite to no state or federal law, regulation, or rule of professional ethics for

executive branch employees that prohibits Commissioner Aho from leaving her job as a lobbyist at Pierce Atwood, LLC and move directly into a new position where she is in a position to make decisions that affect former clients of Pierce Atwood, LLC. From the timeline it does appear that one of her first decisions as Acting Commissioner directly benefited a client of her former employer. However, in the absence of such law or regulation, as well as the definition of bias recently articulated by the Law Court, this Court is compelled to reject Petitioners' argument on bias.

## CONCLUSION

Because the Court finds that Commissioner Aho had no rational basis or relevant evidence before her which justified the issuance of this CCO in that it simply limited noise reduction requirements to the exact meteorological conditions of July 17 and 18, 2010, the Court reverses her decision and remands this matter to the DEP for redetermination that the cause of the violation was significant vertical and directional wind shear, and to issue a CCO that is capable of fully remedying the violation which the DEP found occurred. Because of the passage of time, the Department is obviously free to rely upon other relevant data or evidence that has been generated or obtained since the issuance of the CCO in crafting the new CCO.

In addition, while the Court has not made a finding of bias, it recognizes the difficult issues created by Commissioner Aho's continuing participation in this matter in light of her former affiliation with FIW's law firm, Pierce Atwood, LLC. That issue, which could have been avoided,[6] has created an enormous amount of mistrust by the Neighbors as to whether their grievances can receive fair treatment by the Commissioner and the Department. While this case

[6] *See Bath Iron Works v. Maine Workers Comp. Bd.*, No. AP-06-74 (Me. Super. Ct. June 9, 2010) (although the Court did not address the conflict of interest issue on the merits because it was not ripe, in *dicta*, it stated that Paul Dionne should refrain from continued participation in the Board's rulemaking in light of his dual position as the Executive Director of the Board and the Chairman of the Board of Central Maine Healthcare, a medical facility subject to the fee schedule being promulgated).

21

might not present the "extraordinary circumstances" which must exist for a Court to find "bias" as that term has been defined by the Law Court, Commissioner Aho's continuing participation in deciding upon operational and complaint protocols could be viewed as antithetical to the common notions of impartiality which Maine citizens understandably expect from decision-makers in Maine agencies. As this matter is being remanded to the Department, the Court trusts that the Department will consider the wisdom of her continued participation in this process as the Department reformulates the CCO consistent with this Order, and as it provides the Department's rationale for the complaint protocol it established or maintains in response to the violations found by the Department to have occurred.

**The entry will be:**

**The Court DENIES FIW's motion to dismiss the Petition on mootness grounds.**

**The Court DENIES the Petitioners' claims that their rights to equal protection and their First Amendment rights have been violated.**

**The Court REVERSES the Decision of the Department of Environmental Protection dated June 30, 2011, and REMANDS this matter to the Department for issuance of a CCO consistent with the findings of the Department's expert that the violation occurred as a result of "significant vertical and directional wind shear" and is further instructed to require an operational protocol which would prevent further violations of the noise rules. Finally, the Court REMANDS this matter to the Department to issue further findings of fact, or otherwise articulate its rationale as to the complaint protocol implemented or**

maintained after the Department found violations of the noise standards by FIW. Unless otherwise agreed by the parties, the Department shall have 90 days from the date of this order to issue the findings or explanation regarding the ongoing complaint protocol.

\_\_\_\_\_3 / 10 / 14\_\_\_\_\_                    _____
DATE                                           SUPERIOR COURT JUSTICE

23

F

| Date Filed | 7/28/11 | Kennebec | Docket No. | AP-11-42 |

County

Action   Petition For Review
80C

**J. Murphy**

Fox Islands Wind, LLC (PII)

Fox Islands Wind Neighbors                vs.  Maine Dept of Environmental Protection

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Rufus Brown, Esq.<br>PO Box 7530<br>Portland, ME  04112-7530 | Catherine Connors, Esq. (PII)<br>Thomas Doyle, Esq.      (PII)<br>Nicholas Livesay, Esq.<br>Merrill's Wharf<br>254 Commercial Street<br>Portland Maine 04101-4664<br>- Amy Mills, AAG |

| Date of Entry | |
|---|---|
| 7/28/11 | Petition For Review Of Final Agency Action, filed.  s/Brown, Esq. |
| 8/2/22 | Appearance, filed. s/Connors, Esq. |
| 8/8/11 | Entry of Appearance, filed. s/Mills, AAG |
| 8/16/11 | Motion of Respondent Fox Island Wind, LLC to Dismiss Petition for Review for Lack of Jurisdiction and Incorporated Memorandum of Law, filed. s/Connors, Esq.<br>Proposed Order, filed.<br><br>Motion of Respondent Fox Islands Wind, LLC to Stay Proceedings Pending Disposition of its Motion to Dismiss and Incorporated Memorandum of Law, filed. s/Connors, Esq.<br>Proposed Order, filed. |
| 8/26/11 | Petitioners' Motion To Extend Time To Respond To Motion To Dismiss, filed 8/22/11.  s/Brown, Esq. |
| 8/26/11 | Petitioners' Motion For Expedited Action On Motion To Extend Time To Respond, filed 8/22/11.  s/Brown, Esq. |
| 8/26/11 | Letter indicating PII Fox Island Winds has no objection to Petitioner's request for extension to 9/23 to respond to pending motion to dismiss, filed 8/23/11.  s/Connors, Esq. |
| 8/29/11 | Motion to Stay Proceeding and Motion for Enlargement of Time to Respond to Motion to Dismiss, filed. s/Mills, AAG |
| 9/1/11 | ORDER, Murphy, J.  (8/30/11)<br>Motion of PII Fox Islands Wind, LLC is GRANTED. All deadlines, including the filing of the record, shall be suspended pending disposition of FIW's motion to dismiss.  If the Court denies that motion, the record shall be filed 30 days after the date of that denial, with all subsequent deadlines in accordance with Rule 80C.<br>Copy to Attys Brown, Connors, Doyle, and AAG Mills |

| Date of Entry | |
|---|---|
| 9/1/11 | ORDER, Murphy, J. (8/30/11)<br>Petitioners' Motion To Extend Time To Respond To Motion To Dismiss is GRANTED. Response due 9/23/11.<br>Copy to Attys Brown, Connors, Doyle, and AAG Mills |
| 9/1/11 | ORDER, Murphy, J. (8/30/11)<br>Petitioners' Motion For Expedited Action On Motion To Extend Time To Respond is GRANTED.<br>Copy to Attys Brown, Connors, Doyle, and AAG Mills |
| 9/1/11 | ORDER, Murphy, J. (8/30/11)<br>Department's Motions to Stay and for Enlargement of Time are GRANTED. Deadline for filing administrative record is suspended pending disposition of FIW's motion to dismiss. If the Court denies that motion, the Department shall file the record 30 days after the date of that denial. The Department's deadline for filing a response to FIW's motion to dismiss is 9/23/11.<br>Copy to Attys Brown, Connors, Doy, and AAG Mills |
| 9/20/11 | Notice of Change of Address of Counsel, filed. s/Connors, Esq. |
| 9/22/11 | Return Receipt served on Patricia Aho on 8/1/11<br>Return Receipt served on George Baker on 8/1/11<br>Return Receipt served on William Schneider on 8/1/11 |
| ------- | Petitioners' Objection to Respondent Fox Islands Wind's Motion to Dismiss, s/Brown, Esq.<br>Authentication of Records, filed.<br>Authentication of Documents, filed.<br>Attached Exhibits, filed. (A-N) |
| 9/23/11 | Department's Memorandum In Response To Motion To Dismiss, filed. |
| 9/28/11 | Reply of Respondent Fox Islands Wind, LLC in Support of its Motion to Dismiss for Lack of Jurisdiction, filed. s/Connors, Esq. |
| 10/13/11 | Petitioners' Motion For Leave To File Opposition In Excess Of 20 Pages, filed 10/7/11. s/Brown, Esq. |
| 10/18/11 | ORDER (Motion For Leave), Murphy, J. (10/17/11)<br>GRANTED.<br>Copy to Attys Brown and Connors, AAG Mills |
| 1/11/12 | Petitioners' Motion For Leave To File A Reply To Memorandum Of Maine Department Of Environmental Protection, filed. s/Brown, Esq. |
| 1/19/12 | Letter regarding Petitioners' Motion For Leave To File A Reply, filed 1/13/12. s/Connors, Esq. |
| 1/27/12 | Memorandum of Respondent Fox Islands Wind, LLC in Opposition to Petitioners' Motion for Leave to File a Reply to the Memorandum of Maine Department of Environmental Protection, filed. s/Connors, Esq. |
| 1/27/12 | Department's Memorandum In Response To Motion For Leave To File Reply, filed. s/Mills, AAG |
| 1/31/12 | Petitioners' Reply To Objections To Petitioners' Motion To File Reply Memorandum, filed 1/30/12. s/Brown, Esq. |
| 2/2/12 | Motion hearing scheduled for 3/8/12 at 9:00 a.m.<br>Motion list mailed to attorneys of record |

ile 2

| Date of Entry | Fox Islands Wind Neighbors vs. DEP  Docket No. ___AP11-42___ |
|---|---|
| 2/16/12 | PETITIONER'S MOTION FOR LEAVE, Murphy, J. (2/15/12)<br>MOTION Granted over objection.<br>Copies to attys. of record<br><br>Petitioner's Reply to Memorandum of the Maine Department of Environmental Protection, filed. (1/11/12) |
| 3/12/12 | Oral argument held 3/8/12, J. Murphy presiding.  Rufus Brown, Esq. for Petitioner; Amy Mills, AAG, for Respondent; Catherin Connors, Esq. for PII Fox Island Wind.   (On Motion to Dismiss.)<br>Tape 1484, Index 5483-7160 and Tape 1485, Index 0-1295.<br>Under advisement. |
| 3/16/12 | Petitioners' Motion To Amend Petition And Add Parties, filed.  s/Brown, Esq. |
| 3/20/12 | ORDER ON MOTION TO DISMISS, Murphy, J.<br>The Court DENIES FIW's motion to dismiss.<br>Copy to attorneys of record. |
| 3/21/12 | Transcript Order, filed 3/20/12.  s/Alan Farago<br>Copy sent to Electronic Recording office. |
| 3/23/12 | Copy of US Supreme Court decision Sackett v. EPA, filed.  s/Brown, Esq. |
| 3/30/12 | Motion For Reconsideration, filed 3/29/12.  s/Mills, AAG |
| 4/3/12 | State's Assented-To Motion For Enlargement Of Time In Which To File Administrative Record, filed 4/2/12.  s/Mills, AAG |
| 4/3/12 | Memorandum Of PII Fox Islands Wind, LLC In Support Of Motion For Reconsideration, filed.  s/Connors, Esq. |
| 4/3/12 | Hearing on Motion For Reconsideration scheduled for 5/9/12 at 10:30 a.m.<br>Copy of motion list mailed to Attys Brown and Connors, and AAG Mills. |
| 4/10/12 | ORDER on Motion For Enlargement Of Time In Which To File Administrative Record, Murphy, J.  (4/6/12)<br>GRANTED.  The deadline for filing the administrative record is 5/1/12.<br>Copy to Attys Brown and Connors and AAG Mills. |
| 4/12/12 | ORDER on Petitioners' Motion To Amend Petition And Add Parties, Murphy, J.<br>No objection having been filed, the motion is GRANTED.<br>Copy to Attys Brown and Connors, and AAG Mills |
| 4/12/12 | Copy of letter from Office of Transcript Production to Alan Farago regarding receipt of transcript order and estimated cost, filed 4/11/12. |
| 4/13/12 | Amended Petition For Review And Complaint, filed.  s/Brown, Esq. |
| 4/13/12 | Petitioners' Motion For Future Course Of Proceedings, filed.  s/Brown, Esq. |
| 4/19/12 | Petitioners' Objection To Respondent's Motion For Reconsideration, filed.  s/Brown, Esq. |
| 4/26/12 | Reply Memorandum In Support Of Motion For Reconsideration, filed 4/25/12.  s/Mills, AAG |
| 5/8/12 | Petitioners' Reply On Motion For Future Course Of Proceedings, filed 5/7/12.  s/Brown, Esq. |

File 3

| Date of Entry | Docket No. AP-11-42 |
|---|---|
| 5/1/12 | Administrative Record, filed.  s/Mills, AAG |
| | Partially Assented-To Motion To Omit Raw Data From The Filing Of Record, filed.  s/Mills, AAG |
| | Department's Memorandum In Partial Opposition To Petitioners' Motion To Specify The Future Course Of Proceedings, filed.  s/Mills, AAG |
| 5/2/12 | Memorandum Of Party In Interest Fox Islands Wind, LLC In Partial Opposition To Plaintiff-Petitioners' Motion To Schedule Future Course Of Proceedings, filed.  s/Connors, Esq. |
| 5/4/12 | State's Assented-To Motion For Enlargement Of Time In Which To File Answer, filed.  s/Mills, AAG |
| 5/4/12 | Letter indicating no transcript will be prepared, filed.  s/Cheney, Admin. Asst., Office of Transcript Production. |
| 5/10/12 | Motion hearing held 5/9/12, J. Murphy presiding.  Atty Brown, AAG Reid, and Atty Connors present.  Tape 1543, Index 2220-4690. Under advisement. |
| 5/11/12 | Respondents' Answer to Amended Petition For Review And Complaint, filed.  s/Mills, AAG |
| 5/24/12 | ORDER On Motion To Reconsider Order, Murphy, J. (5/23/12) The Department of Environmental Protection's Motion for Reconsideration filed March 29, 2012 is DENIED.  Any party wishing to request or move for correction or modification of the record must do so by June 8, 2012.  If either the Department or Fox Island Wind, LLC wish to file a motion to dismiss the amended complaint, any such motion shall be filed by June 15, 2012.  Fox Island Wind Neighbors will have until July 3 to file any opposition to such motions. Copy to Atty Brown, AAG Mills, and Atty Connors |
| 5/24/12 | ORDER on Petitioners' Motion For Future Course Of Proceedings, Murphy, J. (5/23/12) DENIED without prejudice.  See Order issued this date on Motion For Reconsideration. Copy to Atty Brown, AAG Mills, and Atty Connors |
| 5/24/12 | ORDER on Department's Motion To Omit Raw Data From The Filing Of Record, Murphy, J.  (5/23/12) The Department's motion to omit raw data, as identified in the Index to the Record, is GRANTED, subject to the Parties' right to request inclusion of raw dtat upon review of the record. Copy to Atty Brown, AAG Mills, and Atty Connors |
| 5/24/12 | ORDER on Department's Motion For Enlargement Of Time To File Answer, Murphy, J.  (5/23/12) GRANTED.  The deadline for filing the answer is 5/11/12. Copy to Atty Brown, AAG Mills, and Atty Connors |
| 6/4/12 | Application For Transfer To Business And Consumer Docket, filed 6/1/12.  s/Connors, Esq. Copy sent to BCD. |

| Date of Entry | |
|---|---|
| 6/5/12 | Letter re: Order on Motion to Reconsider Order, taking of additional evidence and future proceedings, and suggesting conference of counsel, filed 6/4/12.  s/Brown, Esq. |
| 6/5/12 | Letter objecting to transfer to Business and Consumer Docket, filed 6/4/12.  s/Brown, Esq. |
| 6/5/12 | Petitioners' Motion For Modification Of The Record, filed 6/4/12.  s/Brown, Esq. |
| 6/5/12 | Letter in response to Attorney Brown's letter re: taking of additional evidence, filed 6/5/12.  s/Livesay, Esq. |
| 6/8/12 | Motion of Party-in-Interest Fox Islands Wind, LLC to Correct and Modify the Record, filed 6/7/12.  s/Livesay, Esq. |
| 6/11/12 | Respondent's Assented-To Motion For Enlargement Of Time In Which To File Motions To Dismiss, filed.  s/Reid, AAG.  (GRANTED 6/11/12.  Murphy, J.) |
| 6/12/12 | ORDER, Murphy, J.  (6/11/12)<br>The Court has reviewed correspondence from parties FIWN and FIW, LLC of 5/31/12, 6/1/12, and 6/4/12 and agrees that a phone conference shall be convened to provide mechanism for Court to consider Rule 80C(e) motions.  Clerk to schedule phone conference for June 22, 2012 if counsel are available, or next available date.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 6/19/12 | ORDER, Murphy, J.<br>The Court conferred with the parties by phone this date.  Any party wishing to file any motion relative to the administraive record with respect to the Rule 80C counts in this action shall do so no later than 14 days after the Business and Consumer Docket (Court) acts upon Fox Island Wind's application or by 8/3/12, whichever occurs first.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 6/26/12 | Motion of PII to Dismiss Counts III and IV of the Amended Petition for Review and Complaint, filed 6/22/12.  Request for hearing, filed 6/22/12.  s/Connors, Esq. |
| 6/26/12 | Respondents' Motion To Dismiss Independent Claims, filed 6/22/12.  s/Mills, AAG |
| 6/29/12 | ORDER, Horton, J.  (6/26/12)<br>The case is NOT ACCEPTED for transfer to Business and Consumer Docket.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 7/3/12 | Petitioners' Motion To Extend Time To Respond To Motions To Dismiss, filed 7/2/12.  s/Brown, Esq. |
| 7/13/12 | Reply of PII Fox Islands Wind, LLC to Petitioners' Qualified Objection to FIW's Motion to Modify the Record, filed 7/10/12.  s/Connors, Esq. |
| 7/13/12 | Petitioners' Revised Additions To The Administrative Record, filed 7/5/12.  s/Brown, Esq. (#144 to 157)<br>Petitioners' Qualified Objection To FIW's Motion To Modify The Record, filed 7/5/12.  s/Brown, Esq. |

| Date of Entry | |
|---|---|
| 7/13/12 | Response of PII Fox Islands Wind, LLC in Opposition to Petitioners' Motion for Modification of the Record, filed 7/5/12. s/Livesay, Esq. |
| 7/13/12 | -Cover letter indicating the State has no objection to the relief requested in the 6/6/12 motion of PII to correct and modify the record, filed 7/5/12. s/Mills, AAG<br>-Revised Index to Record, filed 7/5/12. s/Mills, AAG (w/ corrections)<br>-Respondents' Memorandum of Law in Partial Opposition to Petitioners' Request to Supplement the Record, filed 7/5/12. s/Mills, AAG<br>-Respondents' Assented-To Motion to Add Record Documents, filed 7/5/12. s/Mills, AAG<br>-Revised Index to Record, filed 7/5/12. s/Mills, AAG<br>- Record documents 144 to 157, filed 7/5/12. s/Mills, AAG |
| 7/19/12 | Petitioners' Additions To The Administrative Record, filed. s/Brown, Esq. |
| 7/19/12 | -Petitioners' Objection To Motions To Dismiss Counts III and IV Of Amended Complaint, filed 7/19/12. s/Brown, Esq.<br>-Petitioners' Motion For Leave To File Opposition In Excess Of 20 Pages, filed. s/Brown, Esq.<br>-Petitioners' Response To FIW's Opposition To FIWN's Motion To Modify The Record, filed. s/Brown, Esq. |
| 7/19/12 | ORDER, Murphy, J. (7/18/12) (Petitioners' Motion To Extend Time)<br>Petitioners have until 7/20/12 to file objection. However, due to late presentation of this motion to undersigned, further extension may be granted if requested.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 7/19/12 | ORDER, Murphy, J. (Respondents' Motion To Add Record Documents)<br>The Respondents' unopposed motion to add two additional documents to the administrative record, as set forth in the Department's revised Index to the Record, is GRANTED.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 7/19/12 | Motion hearing scheduled for 8/8/12 at 1:30 p.m.<br>Motion list mailed to Atty Brown, AAG Mills, Atty Connors |
| 8/1/12 | Respondents' Further Memorandum Of Law In Partial Opposition To Petitioners' Request To Supplement The Record; Revised Index To Record 4/20/12; Supplemental Record #158-163, filed 7/20/12. s/Mills,AAG |
| 8/1/12 | Reply Of PII To Dismiss Counts III and IV Of The Amended Petition, filed 7/25/12. s/Connors, Esq. |
| 8/1/12 | Respondents' Reply To Petitioners' Objection To Motion To Dismiss Independent Claims, filed 7/25/12. s/Mills, AAG |
| 8/1/12 | ORDER, Murphy, J. (7/19/12)<br>Motion For Leave To File Opposition IN Excess Of 20 Pages is GRANTED.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 8/8/12 | Motion hearing held. Murphy, J. presiding. Rufus Brown, Esq, Amy Mills, AAG, and Catherine Connors, Esq. Tape 1579, Index 2140-5276.<br>Motions under advisement |

ile 4

| | Date of Entry | Page 7<br>Fox Islands Wind Neighbors v. DEP | Docket No. ___AP-11-42___ |
|---|---|---|---|

| | Date of Entry | |
|---|---|---|
| | 8/23/12 | —Letter in response to 8/8/12 oral instructions of the Court indicating the status of enclosed documents and status of remaining documents, filed 8/20/12. s/Connors, Esq.<br>—Record Documents Identified for Inclusion by FIW, filed 8/20/12. s/Connors, Esq. |
| | 8/23/12 | Letter to update the Court on the parties' progress on resolving the record issues, filed 8/20/12. s/Mills, AAG |
| | 8/24/12 | Letter to follow up on letter of FIW dated 8/17/12 and of DEP dated 8/20/12, filed. s/Connors, Esq. |
| File 5 | 9/6/12 | —Petitioners' Motion For The Taking Of Additional Evidence, filed. s/Brown, Esq.<br>—Petitioners' Detailed Statement Of Evidence Intended To Be Taken, filed. s/Brown, Esq. |
| | 9/7/12 | Letter indicating Page 4 of Cassida Affidavit was inadvertently omitted, with copy of Exhibit A to substitute, filed. s/Brown, Esq. |
| | 9/19/12 | Documents numbered 152-175, with index, for inclusion in the Administrative Record, filed 9/14/12. s/Connors, Esq. |
| | 9/19/12 | Letter informing the Court of the status of the Administrative Record for Counts I and II of the Amended Petition, Petitioners' Third Revised Additions To Administrative Record (as of 9/6/12), Index #152-175, filed. s/Brown, Esq. (all filed 9/14/12) |
| | 9/28/12 | Respondents' Memorandum In Opposition To Petitioners' Motion For The Taking Of Additional Evidence, filed 9/25/12. s/Mills, AAG |
| | 9/28/12 | Memorandum Of Party-In-Interest Fox Islands Wind, LLC In Opposition To Petitioners' Motion For The Taking Of Additional Evidence, filed 9/26/12. s/Connors, Esq. |
| | 9/28/12 | Petitioners' Additions to the Administrative Record (Index, Petitioners' Third Revised Additions, Exhibits 1-377 in two volumes), filed. s/Brown,Esq |
| | 10/4/12 | —Petitioners' Reply Memorandum On Motion For The Taking Of Additional Evidence, filed 10/3/12. s/Brown, Esq.<br>—Petitioners' Motion For Leave To File A Reply Memorandum In Excess Of 7 Pages, filed 10/3/12. s/Brown, Esq. |
| | 11/1/12 | ORDER ON MOTIONS TO DISMISS INDEPENDENT CLAIMS, Murphy, J.<br>The Court DISMISSES Count III and Count IV of the amended petition.<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| | 11/6/12 | Motion hearing scheduled for 11/28/12.<br>List mailed to Atty Brown, AAG Mills, and Atty Connors on 11/2/12. |
| | 11/15/12 | —Petitioners' Motion To Amend Motion For The Taking Of Additional Evidence, filed 11/13/12. s/Brown, Esq.<br>—Petitioners' Motion For Clarification And/Or Reconsideration Of Order Dismissing Counts III and IV Of Petitioners' Amended Petition For Review, filed 11/13/12. s/Brown, Esq.<br>—Petitioners' Motion For Expedited Review, filed 11/13/12. s;Brown, Esq/ |

| Date of Entry | |
|---|---|
| 11/15/12 | ORDER, Murphy, J. (11/14/12)<br>Motion GRANTED. (Petitioners' Motion For Leave To File A Reply Memorandum In Excess Of 7 Pages)<br>Copy to Atty Brown, AAG Mills, Atty Connors |
| 11/16/12 | Respondents' Memorandum In Opposition to Petitioners' Motions For Clarification And/Or Reconsideration; Expedited Review; And Motion To Amend Motion For Taking Of Additional Evidence, filed 11/15/12.<br>s/Mills, AAG |
| 11/26/12 | Proposed Consent Order and letter indicating resolution of several outstanding issues, allowing appeal to go forward on a briefing of the merits, filed. s/Mills, AAG |
| 11/27/12 | CONSENT ORDER, Murphy, J.<br>On Petitioners' Motions for Clarification and/or Reconsideration; Expedited Review; Motion to Amend Motion for Taking of Additional Evidence; Motion for the Taking of Additional Evidence; and Briefing Schedule.<br>See Consent Order regarding motions. Hearing on 11/28/12 is canceled.<br>Briefing deadlines: Petitioners shall file by 1/25/13. Respondents shall file within 30 days after service of Petitioners' brief.<br>Party-in-Interest shall file within 10 days after service of Respondents' brief. Petitioners may file a reply 14 days after service of the brief of Party-in-Interest.<br>Copy to Atty Brown, AAG Mills, Atty Connors |

File 6

| Date of Entry | |
|---|---|
| 1/29/13 | Petitioners' Rule 80C Brief, Petitioners' Rule 80C Brief Appendix, filed 1/25/13. s/Brown, Esq. |
| 2/26/13 | Brief of Respondent Department of Environmental Protection, filed 2/25/13. s/Reid, AAG |
| 3/7/13 | Brief Of Party-In-Interest Fox Island Winds, LLC, filed. s/Connors, Esq.<br>Fox Islands Wind LLC's Appendix, filed. |
| 3/27/13 | -Petitioners' Rule 80C Reply Brief, filed 3/25/13. s/Brown, Esq.<br>-Petitioners' Rule 80C Brief Supplemental Appendix, filed 3/25/13. s/Brown, Esq. |
| 4/12/13 | Letter requesting hearing date for oral argument in June, filed. s/Brown, Esq. |
| 5/24/13 | Oral argument scheduled 7/15/13 at 10:00 a.m.<br>Copy of motion list and hearing notice to Atty Brown, AAG Mills, Atty Connors |
| 6/25/13 | Motion and Incorporated Memorandum of Law of Party-In-Interest Fox Islands Wind, LLC to Dismiss Petition for Review on Mootness Grounds, filed 6/19/13. s/Connors, Esq. |
| 7/10/13 | Petitioners Objection to Motion to Dismiss for Mootness, filed. s/Brown |
| 7/15/42 | Reply in Support of Motion to Dismiss Petition For Review on Mootness Grounds, filed 7/11/13. s/Connors, Esq. |

| Date of Entry | |
| --- | --- |
| 7/18/13 | Oral argument held 7/15/13, J. Murphy presiding.<br>Rufus Brown, Esq., Gerald Reid, AAG, and Catherine Connors, Esq. for parties.<br>Tape 1725, Index 4039-7462, and Tape 1726, Index 50-503.<br>Under advisement. |
| 7/24/13 | Notice of Setting of Settlement Conference - ORDER, Humphrey, J.<br>Settlement conference set on 8/14/13 at 9:00 before J. Thomas Humphrey at the Cumberland County Superior Court.<br>Copy to all parties by Cumberland County Clerk's Office on 7/23/13. |
| 8/8/13 | File #6 and Record filed 8/20/12 and 9/14/12 sent to J. Humphrey. |
| 8/30/13 | Notice of Setting of Settlement Conference - ORDER, Humphrey, J.<br>Settlement conference set on 9/16/13 at 9:00 before J. Thomas Humphrey at the Cumberland County Superior Court.<br>Copy to all parties by Cumberland County Clerk's Office on 8/30/13. |
| 9/19/13 | Notice of Setting of Settlement Conference - ORDER, Brodrick, J.<br>Settlement conference set on 10/9/13 at 9:00 before J. Thomas Humphrey at the Cumberland County Superior Court.<br>Copy to all parties by Cumberland County Clerk's Office on 9/17/13. |
| 9/24/13 | Settlement Conference held on 8/14/13. To be continued. |
| 9/24/13 | Settlement Conference scheduled on 9/16/13 was postponed to October. |
| 10/10/13 | Settlement Conference scheduled on 10/9/13 was postponed to 10/16/13. |
| 12/5/13 | File #6 and Record filed 8/20/12 and 9/14/12 returned from J. Humphrey. |
| 3/11/14 | ORDER ON RULE 80C PETITION, Murphy, J. (3/10/14)<br>The Court DENIES FIW's motion to dismiss the Petition on mootness grounds.<br>The Court DENIES the Petitioners' claims that their rights to equal protection and their First Amendment rights have been violated.<br>The Court REVERSES the Decision of the Department of Environmental Protection dated June 30, 2011, and REMANDS this matter to the Department for issuance of a CCO consistent with the findings of the Department's expert that the violation occurred as a result of "significant vertical and directional wind shear" and is further instructed to require an operational protocol which would prevent further violations of the noise rules.<br>Finally, the Court REMANDS this matter to the Department to issue further findings of fact, or otherwise articulate its rationale as to the complaint protocol implemented or maintained after the Department found violations of the noise standards by FIW. Unless otherwise agreed by the parties, the Department shall have 90 days from the date of this order to issue the findings or explanation regarding the ongoing complaint protocol.<br>Copy to Atty Brown, AAG Mills, AAG Reid, Atty Connors.<br>Copy to Repositories. |